IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2000

## KARON JANE SPICER v. JAMES O'NEIL SPICER

**Appeal from the Chancery Court for Dickson County**
**No. 3977-95   Leonard W. Martin, Chancellor**

_____

**No. M1999-01285-COA-R3-CV - Filed February 28, 2001**

_____

In this divorce case, the husband challenges only the trial court's refusal to award him a portion of the wife's retirement account. Although retirement benefits earned during a marriage are marital property, we find the division of property to be equitable and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Jennifer Davis Roberts, Dickson, Tennessee, for the appellant, James O'Neil Spicer

David D. Wolfe, Dickson, Tennessee, for the appellee, Karon Jane Spicer

**MEMORANDUM OPINION**[1]

_____

[1] Tenn. R. App. P. 10(b) states:    The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "M E M O R A N D U M OPINION," shall not be published, and shall not be

(continued...)

This case comes before this court in an unusual procedural posture in that the parties had been divorced for more than three years when the trial court divided the marital property. James O'Neil Spicer ("Husband") and Karon Jane Spicer ("Wife") separated in 1993 and were divorced in 1996 on stipulated grounds. The property was not divided until 1999 and by that time, Husband had become disabled, Wife had sold her interest in the real property to Husband and the parties had, for the most part, divided their personal property. The hearing dealt primarily with Wife's retirement account which the court awarded to Wife in its entirety.

The parties married in 1980, and have three sons, born in 1982, 1986, and 1992. Husband completed high school and was employed as a supervisor for a company that dealt with hazardous materials. He was earning approximately $60,000 annually in 1995, the last year he worked for that company. Wife earned a GED and was working for approximately $20,000 per year at the time of the divorce. Wife participated in her employer's retirement plan, but Husband had no retirement plan.

Husband filed a complaint for divorce in 1992, four months after the youngest child was born. Wife filed an answer denying that Husband had grounds for divorce and asserting that the parties continued to "live together as man and wife." Husband moved from the home in August 1993, but continued to pay the mortgage and utility bills, and on occasion, gave Wife money to buy groceries. The parties dispute the amount of grocery money Husband provided and neither the court nor the special master made any findings regarding the amount Husband had paid to Wife.

On February 9, 1995, Wife filed a petition seeking child support according to the child support guidelines. A hearing was held in March 1995, in which the trial court[2] dismissed Husband's complaint because he had failed to prove grounds for divorce. The court's order, which was not appealed, stated, "[B]ased upon the dismissal of this cause that this matter is terminated and that the fixing of any child support herein is not appropriate at this time." Testimony at the 1999 hearing indicated that when the first judge refused to set child support he told Husband to "[go] back home and take care of what was his." Husband did not return to the marital home, however, but continued to pay the mortgage and utilities and to make some payments toward groceries.

Sometime in 1995, Husband left his $60,000 job dealing with hazardous materials, and took a construction job earning $10 per hour. When asked in Wife's 1996 interrogatories his reason for leaving his employment, Husband, in a sworn, notarized statement, said, "To be at home with my boys." When asked the same question at the 1999 hearing, Husband, for the first time, stated that

---

[1](...continued)

cited or relied on for any reason in a subsequent unrelated case.

[2]A different judge presided over the hearing in the initial divorce action.

he had been fired from the job. Wife's testimony indicated that Husband had told her several times that he would quit his job before he would pay her 41% of his salary as child support.

In August 1995, Wife filed a complaint for divorce from bed and board, seeking, among other things, custody of the children and child support according to the guidelines. A hearing was held in late August, and the trial court granted temporary custody of the children and possession of the marital residence to Wife. Husband was "required to pay and hold [Wife] harmless for all payments on the parties' marital residence together with all utility bills for said residence as child support pending a final decree." In addition, Husband was ordered to pay $125 per week to Wife as additional support *pendente lite.*[3] Shortly after the hearing, Husband answered the complaint, denying that Wife had grounds for divorce, and filing a countercomplaint seeking an absolute divorce. Husband also sought custody of the children. Wife answered the countercomplaint, denying that Husband had grounds for divorce.

In April 1996, Wife filed a "Petition for Citation for Contempt," alleging that Husband had been delinquent in his payment of *pendente lite* support, and that he had failed to pay some of the utility bills, resulting in termination of service.[4]

In July 1996, the trial court held a hearing, and allowed Wife to amend her complaint to request an absolute divorce. Husband stipulated grounds, and the court awarded the divorce to Wife. The court ordered that the real property be listed with a particular real estate broker for sixty days, and if the property did not sell within that period, that it be sold at public auction. The proceeds were ordered to be paid into the registry of the court "for future division." Pending the sale, Husband was ordered to make the mortgage payments, which were approximately $575 per month, and Wife was ordered to pay the utility bills. Wife was awarded custody of the two youngest children, and Husband was awarded custody of the oldest, who was then fourteen. The court ordered Husband to pay Wife $60 per week as child support, stating, "This amount is a deviation from the support guidelines and is based on the temporary division of the marital debt between the parties." Wife was ordered to maintain health insurance for the children, which she later testified cost her $20.93 per week through her employer.

The parties listed the real property for sale as ordered by the court. They asked $79,500 for the property, which was encumbered by a mortgage. The property did not sell within those sixty days, but rather than allowing the property to be sold at auction, Husband offered Wife $12,000 for her interest in it.[5] She agreed, and eventually quitclaimed her interest in the property. Wife and the two youngest sons moved in with Wife's mother.

---

[3] The order did not specify whether the payment was child support or spousal support.

[4] The disposition of the contempt petition is not part of the record.

[5] The special master's report indicated that the property, which the parties had purchased for fair market value, had originally been part of Husband's homeplace and adjoined his father's and uncle's property.

Husband filed a "Motion to Set" in March 1997, requesting that the court set the matter for a final hearing. The court held a hearing in June 1997, and appointed a special master to "take proof and determine the value of the parties' personal property and debts including any retirement benefits owned by the parties since the date of the last Master's report[6] and the date of the divorce." That report was entered in June 1998.

Husband suffered an injury in June 1997 while working construction, and was still not working at the time of the hearing in 1999. He testified that his knee was shattered in the accident, and that his back and hip were hurt; he had undergone two surgeries, and needed another. He testified that he had only 20% of the use of his leg, and that he was not able to climb or to sit for long periods. About a week before the 1999 hearing, Husband received a lump sum worker's compensation settlement of approximately $30,500. Little was left of that money after Husband paid attorney fees from that claim, repaid the temporary disability payments he received from his employer, and paid other bills. He testified that he had applied for Social Security disability benefits, but that his application was still pending.

In June 1998, Husband returned the oldest child to Wife's custody, stating that "he wasn't going to put up with the way the child was acting at his home." Shortly thereafter, Wife filed a petition to modify custody to reflect the change, and to set child support accordingly. Husband and his attorney calculated his child support obligation for the three children at $96 per week, based on Husband's temporary disability payments, and Husband began paying that amount through the court.

Wife's retirement account was valued at $47,953 at the end of 1996, the year the parties were divorced. Husband deducted the balance at the end of 1980, the year the parties married, and made additional deductions based on the relative values of the personal property each party retained, and calculated that his share of Wife's retirement account was $21,734.55.

The trial court considered the parties' testimony and the special master's report, which listed the value of the parties' property, and the values of property Husband had sold, and ruled as follows:

> The clerk and master's put in the case that [Wife] got household furnishings equivalent of about $3,000. On the other side, [Husband] got a gun collection worth some $2,400; Indian artifacts worth about $600; musical instruments of about $2,000; a Massey Ferguson tractor, I guess, of $3,000; a baler of about $1,800; a hay raker of about $400; household furnishings worth about $230. Including in there I noticed was a dishwasher, freezer, and dining room suite. There was a Bronco which they gave to the boy.

---

[6] The trial court entered an order on January 5, 1994, referring the case to a special master to take proof and report to the court on matters relating to real and personal property, while the parties were before the court regarding the earlier complaint.

And the gentleman had disposed of a Jeep for about $1000; a Gooseneck trailer for another $1,000; a John Deere dozer of some kind for about $3,200; and he sold timber looks like for over $1,000; and it says that when he ceased employment at Fergusons he got about $3,000 [sic: $2,000] separation pay; and we know from his testimony here today he's received some $30,000 from a workmen's compensation settlement. And as far as I can tell, none of the cash she received any portion of.

The court in making the division, when I consider all of that, and I have considered that, I have concluded that he got he benefit of considerably more things than she did. And when I weigh those, I'm going to let him keep all those things and she's going to keep her retirement.

I do find that the accumulation of the retirement during the marriage is a marital asset, but at the same time, his entitlement to it starts out with the presumption that he would be entitled to fifty percent of it. And I believe the testimony was that it was worth some forty some thousand dollars at the present time. And obviously, his half of that would be twenty some odd thousand. But when I consider all of the other things that he's got, which she didn't share in at all, then I have concluded that that offsets against his interest, in that, that is near enough, that as a matter of equity I'm going to let her keep it.

She's got the children. Depending on what the outcome of his claim is, she is now and has been for sometime receiving an inadequate amount of child support for these children and she's got her hands full with that. Hopefully, he'll get his social security benefits, and if he does, then hopefully the children will be much better taken [care] of at that point in time, at least we hope that might be the result.

When I consider these various assets and funds that he's received that she hasn't received any portion of whatsoever, I conclude that they more than offset his interest in her retirement account, so I don't award any in this particular case to him.

The court also ordered Husband to continue paying $96 per week as child support, along with the clerk's fee. The court placed an affirmative obligation on Husband to notify the court and his counsel of the outcome of his Social Security claim, as well as any other income he received. Wife was ordered to continue to maintain the health insurance on the children, and each party was ordered to pay half of any medical expenses not covered by insurance. The court reserved the issue of assigning all or part of the children's health insurance costs, pending the outcome of Husband's Social Security claim.

Husband appeals the trial court's refusal to award him a portion of Wife's retirement account.

We review the findings of fact by the trial court *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the

evidence is otherwise. Tenn. R. App. P. 13(d). Conclusions of law do not enjoy the presumption of correctness. *Bookout v. Bookout*, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997). Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. *Gillock v. Board of Prof'l Responsibility*, 656 S.W.2d 365, 367 (Tenn.1983).

In cases involving issues of distribution of marital property, a trial court's decisions enjoy a presumption of correctness. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). Accordingly, a trial court's division of the marital estate should be presumed proper unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984).

Trial courts are directed to make an equitable division of marital property. Tenn. Code Ann. §36-4-121(a)(1) (Supp. 2000). Our statutes provide some guidance in the distribution of property, by directing the courts to consider certain factors when making such decisions. Tenn. Code Ann. § 36-4-121(c). "A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

Retirement benefits accumulated during a marriage are considered marital property, and are subject to division. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn. 1996). Thus, we must consider whether an equitable division of the property requires awarding a portion of Wife's retirement benefits to Husband.

First, we note the trial court obviously intended to divide the property long before three years had passed.[7] The court's 1996 order granting the divorce also ordered that the marital home be placed on the market for sixty days, and if the house did not sell within that period, that it be sold at public auction. Custody of the children was awarded on a "temporary" basis, with Husband having "temporary custody" of the oldest child, and Wife having "temporary custody" of the other two. Husband's child support obligation was set at $60 per week, and the court noted, "This amount is a deviation from the support guidelines and is based on the temporary division of the marital debt[8] between the parties."

The goal of a court's distribution of marital property is fairness, necessarily a fact-specific concept. In weighing the factors relevant to such a decision, the court is specifically authorized to

---

[7]The record contains no explanation for the delay in dividing the marital property, other than some mention of the parties' attempts to negotiate a settlement.

[8]As no other debt was mentioned in the order, we must presume the court referred to its order that Husband pay the mortgage and Wife pay the utilities.

include any factors "necessary to consider the equities between the parties." Tenn. Code Ann. § 36-4-121(c)(10).

Some language in the trial court's opinion seems to indicate that the court considered Husband's lump sum settlement for his worker's compensation claim when it awarded the retirement account to Wife. Marital property consists of that property acquired during the marriage. Tenn. Code Ann. § 36-4-121(b)(1)(A) ("'Marital property' means all real and personal property . . . acquired by either or both spouses during the course of the marriage. . ."). Husband's injury occurred in 1997, thus, the worker's compensation payment represented replacement for wages which would have been earned after the divorce. Tenn. Code Ann. § 36-4-121(b)(1)(C) (recovery from worker's compensation payments which replace wages earned during the marriage are marital property). Such monies may be considered as income when determining the amount of child support Husband should pay, *Gonsalves v. Roberts*, 905 S.W.2d 931, 932 (Tenn. 1995), but cannot be considered when making an equitable division of marital property. We decline to consider Husband's worker's compensation settlement in our review of this matter.

However, the trial court obviously based its decision on other factors relevant to the equities involved in distributing the marital property. In particular, the court carefully recounted the other property distributed and noted Husband's greater share of the personal property awarded. Without considering the values of the automobiles, which the court found to offset each other, Husband received $18,630 in cash and property; Wife received $3,000 worth of household furnishings. As stated earlier, the division of property need not be equal to be equitable, and each spouse need not receive a share of every piece of property. Thus, the trial court correctly considered Husband's share of the entire marital estate and found the distribution equitable. We agree.

The trial court also considered Wife's greater contribution to the support of the children when it noted: "She's got the children. . . . [S]he is now and has been for sometime receiving an inadequate amount of child support for these children and she's got her hands full with that."[9] Wife has maintained a lower paying job which provided the health insurance she was required to maintain on the children. We find it appropriate for the trial court to consider the economic hardships experienced by Wife in determining whether awarding Husband part of her retirement account would be equitable. Because of Husband's change of employment, and later because of his accident, Wife has had to shoulder far more than her share of supporting the children.

---

[9]Both parents have a duty to support their children. *Roble v. Roble*, 295 S.W.2d 817, 818 (Tenn. Ct. App. 1956). Our child support guidelines contemplate that "the obligee will be expending at least an equal percentage of net income as that of the obligor for the support of the children." TENN. COMP. R. & REGS., ch. 1240-2-4-.03(2). We note that child support for three children amounts to 41% of the obligor parent's net income. TENN. COMP. R. & REGS., ch. 1240-2-4-.03(5). The child support guidelines also contemplate that the obligor parent will provide health insurance for the children. TENN. COMP. R. & REGS., ch. 1240-2-4-.04(1)(a). Our regulations require, "If the obligor is not providing health insurance for the child(ren), an amount equal to the amount necessary for the obligee to obtain such insurance shall be added to the percentage calculated . . ." *Id.*

Taking into consideration the deference allowed the trial court's decision regarding division of property, the greater share of the personal property Husband received, and Wife's greater share of supporting the children, we affirm the trial court's award of the entirety of Wife's retirement account to Wife. We find that the trial court properly determined " the equities between the parties" when making the distribution of property. Tenn. Code Ann. § 36-4-121(c)(10). This case is remanded for such further proceedings as may be necessary. Costs are taxed to James O'Neil Spicer, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE